Trust Under Deed of George W. B. Roberts, Dated September 15, 1922, Corn Exchange National Bank and Trust Company, Philadelphia, Trustee and Alleged Transferee v. Commissioner. Estate of George W. B. Roberts, Deceased, Corn Exchange National Bank and Trust Company, Philadelphia, and H. Percival Glendinning, Executors v. Commissioner.
Trust Under Deed of George W. Roberts v. Commissioner
Docket Nos. 10797, 10799.
United States Tax Court
1949 Tax Ct. Memo LEXIS 235; 8 T.C.M. (CCH) 291; T.C.M. (RIA) 49070; March 24, 1949
*235 Decedent, who died in November 1941, established two trusts, one in 1922 and the other in 1934. Under first trust indenture, decedent-grantor reserved to himself the net income thereof for life upon the death of his wife, the primary income beneficiary, who died in 1934. Upon the death of the survivor, the income was payable to the children of decedentgrantor or their issue during continuance of trust. To the second trust decedent-grantor transferred only insurance policies on his life, which the trustees were directed to hold and present for collection upon maturity thereof by the death of decedent-grantor, to invest the proceeds, and to pay the net income to his children or their issue during the continuance of the trust. Both trusts were to terminate 21 years after the death of the last surviving grandchild of decedent-grantor living at date of creation of the trust. Distribution of corpus was limited to lineal descendants of decedent-grantor and no beneficiary was named to take in the event of the death of all lineal descendants prior to the death of decedent-grantor or the termination of the trust. The Commissioner included in the gross estate of decedent-grantor $185,123.21, *236 value of corpus of the 1922 trust, and $14,049.08, proceeds of three insurance policies less the statutory exemption of $40,000 of the 1934 trust. Held, the respective amounts were properly included in the gross estate of decedent-grantor under section 811 (c), I.R.C.
Allowable deductions and reported estate tax exceeded the value of the gross estate of decedent-grantor in the hands of the executors of his estate for administration. Held, trustee of 1922 trust is liable for the deficiency in estate tax of the estate of decedent-grantor under section 827 (b), I.R.C.
Thorpe Nesbit, Esq., 1240 Land Title Bldg., Philadelphia 10, Pa., for the petitioners. William D. Harris, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion These consolidated proceedings involve a deficiency in estate taxes of the Estate of George W. B. Roberts, Deceased, in the amount of $62,741.94 and the liability for such deficiency, plus statutory interest, of the trustee of the Trust under Deed of George W. B. Roberts, dated September 15, 1922. The questions involved are (1) whether the value of the corpus of the trust established by the decedent September 15, 1922, is includible in the *237 gross estate of decedent under section 811 (c), I.R.C., and (2) whether proceeds to the extent of $14,049.08 of three policies of life insurance, which policies were a part of the corpus of a trust created by the decedent on November 5, 1934, are includible in the gross estate of decedent; and whether the trustee of the trust of September 15, 1922, is liable for the deficiency, plus interest, as transferee. The case was submitted upon stipulation and documentary evidence. Findings of Fact George W. B. Roberts, hereinafter referred to as decedent, or grantor, died testate on November 26, 1941. At the time of his death he was a citizen of the United States and resided in Philadelphia, Pennsylvania. Letters Testamentary on the estate of decedent were granted on December 1, 1941, by the Register of Wills of Philadelphia County, Pennsylvania, to H. Percival Glendinning and Corn Exchange National Bank & Trust Company, Philadelphia, and they are the acting executors of the decedent's estate. The Corn Exchange National Bank & Trust Company, Philadelphia, is a corporation organized and existing under the laws of the United States governing national banks and has its principal office in Philadelphia, *238 Pennsylvania. Such trust company, as trustee and alleged transferee, is also petitioner in Docket No. 10797. On February 19, 1943, the executors of the estate of decedent filed a Federal estate tax return for the estate with the collector of internal revenue for the first collection district of Pennsylvania at Philadelphia, Pennsylvania, reporting therein the items comprising the gross estate, deductions, credits, and showing a net estate for Federal estate tax of $284,624.08 before the specific exemptions. The Federal estate tax of $52,716.21 shown to be due by the return was paid to the above-named collector at the time of the filing of the return. In such return, the executors elected, pursuant to the provisions of section 811 (j) of the Internal Revenue Code, to have the property, constituting the gross estate of their decedent, valued for Federal estate tax purposes on a date one year after the date of death of their decedent, the date so elected being herein referred to as the optional valuation date. On September 15, 1922, the decedent made, executed and delivered an irrevocable deed of trust (his wife, Mary F., joined in the deed) to William B. Montgomery, as trustee, who accepted *239 the trust. The deed of trust is included herein by reference. Therein the trustee was directed to hold and manage the principal of the trust and any additions thereto and to pay the net income therefrom to Mary F. Roberts, wife of the grantor, for life in quarterly installments, and in the event of her death prior to the death of the grantor, to the grantor for life. The deed of trust further provided, in part, as follows: "Upon the death of the survivor of MARY F. ROBERTS and GEORGE W. B. ROBERTS, the Trustee shall divide the income annually into five (5) equal parts or shares, one of said shares being paid to each of the five (5) children of the Settlor for their respective lives. If any children of the Settlor shall die leaving issue during the continuation of the Trust, then her share of income shall go to and descend and be distributable to her children and grandchildren in equal shares, per stirpes and not per capita. "If, however, any of the children of the Settlor shall die without issue, then the share of income of that one or those so dying, shall pass to and descend to the other children of the Settlor, and the issue of any who may then be deceased, leaving issue, in equal *240 shares, per stirpes and not per capita; and if two or more of said children of the Settlor shall die without issue, then her share of the income shall, in like manner, go to and descend to the survivors or survivor of the children of the Settlor or the issue of any who may then be deceased leaving issue, in equal shares per stirpes and not per capita, until the termination of the Trust. If, during the continuation of the Trust, the issue of any child or children of the Settlor, who shall have become interested in the income of the estate, shall die off, the share of income of the issue so dying, shall immediately pass to and be distributed among the surviving children of the Settlor, and the issue of any who may then be deceased leaving issue, in equal shares per stirpes and not per capita, as long as the Trust shall last. "The Trust shall continue until twenty-one (21) years after the death of the last surviving grandchild of the Settlor in being at the execution of this deed. At that instant, and not before, the persons to take in remainder shall be determined and their rights fixed. The principal of the estate shall be divided among the issue of the children of the Settlor then *241 living, in equal shares per stirpes and not per capita, in fee simple and absolutely, and the Trustees shall grant, pay over and deliver the principal of the estate to the persons entitled thereto. "It is the desire and intention of the Settlor that in so far as the property constituting the subject matter of this Trust is subject to his control, it shall be held for the benefit of and ultimately pass to members of the Roberts family. Having this in mind, it is the wish and desire of the Settlor that in the event that any of the children of the Settlor die without issue or die leaving issue who in turn die off before the termination of the Trust, then the interest of that child in the estate shall immediately cease and determine and pass to the survivors and their issue, as above provided, the whole principal thus ultimately vesting in interest and possession in direct descendants of the Roberts family. ( Shirk's Estate 242 Pa. 95.) * * *
"It shall be the duty of the Trustee to hold the principal and income of this estate so that the same shall at all times be free and clear from the control, debts, liabilities and engagements of any of the beneficiaries, and so as not be subject *242 to assignment or anticipation by them or by any husband or husbands they may now have or hereafter take. The receipts of the respective beneficiaries shall be the sole discharge and release of the Trustee." On or about the same date, the decedent transferred and delivered to the abovenamed trustee the property which was the subject of the deed of trust. On the optional valuation date the value of the property transferred to the trust was $185,123.21. On November 14, 1928, the above-named trustee presented a petition to the Court of Common Pleas No. 3 of Philadelphia County, Pennsylvania, praying for his discharge as trustee. On January 11, 1929, by decree of such court, he was discharged and the Corn Exchange National Bank & Trust Company, Philadelphia, was appointed substituted trustee. The decedent's wife, Mary F. Roberts, died on October 10, 1934. On November 5, 1934, the decedent made, executed and delivered an irrevocable deed of trust to H. Percival Glendinning and Corn Exchange National Bank & Trust Company, Philadelphia, as trustees, who accepted such trust. On or about the same date, the decedent transferred and delivered to the trustee five policies of life insurance on his *243 life listed in a schedule annexed to the deed of trust as follows: Policy No. 690,815 Mutual Life Insurance Co. of N.Y.
$20,000
Policy No. 103,138 Penn Mutual Life Insurance Co.
10,000
Policy No. 507,328 Penn Mutual Life Insurance Co.
10,000
Policy No. 785,281 Northwestern Mutual Life Ins. Co.
25,000
Policy No. 990,222 Northwestern Mutual Life Ins. Co.
12,000
The deed of trust dated November 5, 1934, is incorporated herein by reference. This deed of trust provided, among other things, as follows: "Upon maturity of any and all policies held hereunder by the death of the Grantor, the Trustees shall present such policies for collection and shall be entitled to collect and receive the proceeds thereof, and shall thereupon and thereafter hold and manage such proceeds and all other moneys receivable by them hereunder, invest and reinvest the same, collect the income, pay all taxes and other charges that may properly be made against the trust, and pay over and distribute the net income and the principal thereof subject to the following terms and conditions: "The Trustees shall divide the income into four equal parts or shares and shall pay one of such shares of income to each of Grantor's four children *244 for their respective lives. If any of Grantor's children shall die leaving issue during the continuation of the Trust, then her share of income shall pass to and be distributable to her children and grandchildren, in equal shares, per stirpes. If, however, any of the children of Grantor shall die without issue, then the share of income of the child or children so dying shall pass to and be distributable to Grantor's other children and to the issue of any that may be deceased, in equal shares, per stirpes, until the termination of the trust. If during the continuation of the Trust the issue of any child or children of Grantor who shall have become entitled to income as above provided, shall die, the share of income of the issue so dying shall immediately pass to and be distributable among the then surviving children of Grantor and the issue of any who may then be deceased, in equal shares, per stirpes, until the termination of the trust. "The Trust shall continue until twenty-one years after the death of the last surviving grandchild of Grantor in being at the time of the execution of this Deed of Trust, when the persons to take in remainder shall be determined and their rights fixed, *245 and thereupon the Trustees shall grant, pay over and deliver the principal of the trust estate to the then surviving issue of Grantor's children, in equal shares, per stirpes, absolutely. "It is the desire and intention of the Grantor that in so far as the property constituting the subject matter of this Trust is subject to his control, it shall be held for the benefit of and ultimately pass to members of the Roberts family. Having this in mind, it is the wish and desire of the Grantor that in the event that any of the children of the Grantor die without issue or die leaving issue who in turn die off before the termination of Trust, then the interest of that child in the estate shall immediately cease and determine and pass to the survivors and their issue as above provided, the whole principal thus ultimately vesting in interest and possession in direct descendants of the Roberts family. ( Shirk's Estate 242 Pa. 95.) * * *
"The principal and income of this Trust Estate shall be held by the Trustees at all times free and clear from the control, alienation, pledge, anticipation, assignment, and without being subject to the debts, contracts and engagements of the Grantor, now existing *246 or hereafter incurred, or of the beneficiary or beneficiaries, or any of them, or of any spouse or spouses they or any of them may now or hereafter have. The receipts of the respective beneficiaries shall be the sole discharge and release of the Trustees. "The Trustees shall be under no duty or responsibility to pay any premiums or other charges required to continue in force the above mentioned policies of insurance or any additions thereto or substitutions therefor, or to procure renewals thereof, or to see that the policies are kept in force, nor shall the Trustees have any responsibility with respect to any indebtedness of the Grantor, now existing or hereinafter incurred, to the insurance companies, the policies of which may be included herein. Until the Trustees have received the proceeds of the policies or any of them, they shall have no duty with respect thereto except to furnish safekeeping during the Grantor's life and to take the necessary and appropriate steps to collect the proceeds thereof." The grantor in the trust deed reserved the power to add to the principal of the trust by depositing and assigning to the trustees additional life insurance policies upon the same terms *247 and conditions as though originally deposited and assigned and to continue the payment of premiums on the policies included in the trust. In the Federal estate tax return, the executors reported, for information only, the facts hereinabove recited concerning the deeds of trust of September 15, 1922, and November 5, 1934. They did not include the value of the property comprising the principal of either of the trusts in decedent's gross estate. In reporting the value of the principal of trust of November 5, 1934, at $85,358.95, the executors inadvertently included Penn Mutuallife Insurance Company policies, numbered 507,328 and 103,138, in the amounts of $6,978.80 and $8,069, respectively, or a total of $15,047.80. Such policies had been surrendered by the trustees to the insurance company for cash prior to the decedent's death. The total value of the principal of the trust of November 5, 1934, as reduced by the surrender of said policies, was $70,311.15 on the optional valuation date, of which $54,049.08 represented the proceeds of policies on the life of decedent, numbered 690,815; 785,281; and 990,222. Policy No. 690,815 bears a stamped notation to the effect that it had been assigned *248 to The Mutual Life Insurance Company of New York as security for a loan in an undisclosed amount on April 29, 1939, and also two other stamped notations as follows: Additional Loan Made New York… May 4, 1940 Additional Loan Made New York… June 3, 1941 The estate tax return discloses that at the time of the death of decedent the last named policies were subject to loans, plus unpaid interest, in amounts as follows: Policy No.
Loan
Interest
690,815
$1,549.89
$52.49
785,281.h2,449.38
80.68
990,222
2,045.49
46.56 Attached to each policy, numbered 785,281 and 990,222, is an application in which decedent is named as the applicant for the insurance on his life and is signed "George W. B. Roberts." The value at optional valuation date of the gross estate of decedent as reported in the estate tax return of $328,205.12 included, however, transfers by decedent during life after March 1, 1931, of the value at optional valuation date of $243,897.64. The latter amount was increased by $33.50 by the respondent. The respondent also determined that the value of certain miscellaneous property at optional valuation date was $219.32. Such property was reported as having no value. There is no dispute in regard to *249 the two adjustments referred to. Therefore only assets of the value at optional valuation date of $84,526.80 were in the hands of the executors of the decedent's estate for administration. The deductions claimed in the return and allowed by the respondent total $43,581.04. According to stipulation the estate is entitled to additional deductions to be determined under Rule 50. The estate tax reported and paid and the allowed deductions total $96,297.25. Following the audit of the Federal estate tax return, the Commissioner determined a deficiency in estate tax in the sum of $62,741.94, notifying the executors thereof by registered letter dated February 4, 1946. He also determined a liability in that amount plus interest as provided by law against the Corn Exchange National Bank & Trust Company, Philadelphia, as trustee and transferee of the inter vivos trust dated September 15, 1922, notifying said bank by registered letter dated February 4, 1946. In determining the net estate for tax, the Commissioner included the amount of $185,123.21, representing the value on the optional valuation date of the assets of the trust dated September 15, 1922, in the decedent's gross estate for the reason, *250 as stated in his notice of deficiency, as follows: "* * * where a donor has reserved a life estate in property with a gift over in remainder after the donor's death conditioned expressly or by implication upon surviving the donor, the interest or contingent interest of the decedent or his estate not being terminable prior to decedent's death, the transfer is taxable under Section 811 (c) of the Internal Revenue Code and Item 1 [$185,123.21] is, therefore, included as part of the decedent's gross estate." In determining the net estate for tax, the Commissioner also included in the value of the decedent's gross estate an amount of $14,049.08 in respect to the assets of the trust dated November 5, 1934, for the reason, as stated by him in his notice of deficiency, as follows: "The two insurance policies listed as Sub-Items 47 and 48 of Item 2, [Policies numbered 103,138 and 507,328] had been surrendered before the decedent's death and should not have been included in the corpus of this trust. The estate listed this item at $85,258.95 [$85,358.95] but did not return it for tax. When Sub-Items 47 and 48, insurance, are excluded, the value of this trust is reduced to $70,311.15. Of this *251 amount, only $54,049.08 represents insurance, which is further reduced by the $40,000 insurance exemption, leaving a balance of $14,049.08 which amount is held to be includable as part of the decedent's gross estate. Until his death, there was no certainty that the policies would not be payable to decedent's estate." On September 15, 1922, the decedent had living four * daughters and 10 grandchildren. On November 4, 1934, the decedent had living four daughters and 14 grandchildren. At the date of decedent's death, November 26, 1941, there were surviving him four daughters ranging in age from 47 to 54 years, 14 grandchildren ranging in age from 8 to 26 years and three great-grandchildren, the oldest of whom was about a year and one-half. It was stipulated that upon submission of proof satisfactory to the respondent with respect to the payment of any attorney's fees, administration expenses and other expenses (not previously allowed as deductions from the gross estate), such attorney's fees, administration *252 expenses and other expenses, including any in connection with this proceeding which may constitute proper deductions from the gross estate, will be allowed as deductions in the computation submitted in accordance with Rule 50. It was further stipulated that the petitioners may, within the statutory period, claim credit for payment of State estate, inheritance, legacy or succession taxes, and may present to the Bureau of Internal Revenue proof of such payment. Opinion VAN FOSSAN, Judge: A discussion of the arguments of the petitioners and the cases cited would serve no useful purpose, in view of the recent decisions of the Supreme Court: Commissioner v. Estate of Francois L. Church, 335 U.S. 632 (January 17, 1949), and Estate of Sidney M. Spiegel, Deceased, v. Commissioner, 335 U.S. 701, (January 17, 1949), which expressly overruled May v. Heiner, 281 U.S. 238, and other cases relied upon by petitioners. These decisions are dispositive of all questions as to the inclusion of the trust corpori in the taxable estate. Respondent is affirmed. The remaining question is whether the Corn Exchange National Bank and Trust Company, Philadelphia, trustee of the 1922 trust, is liable for the *253 deficiency in estate tax of the decedent's estate. Although the petitioner in Docket No. 10797 makes no reference thereto in its brief, since the burden is on respondent, consideration must be given to the proof. In his answer, the respondent affirmatively alleged, among other things, that the decedent had transferred certain assets in trust under the trust deed of September 15, 1922, the value of which on the optional valuation date was $185,123.21; that no part of the deficiency in estate tax determined against the estate of decedent had been paid; that all thereof was due; that the estate was insolvent; and that by reason of the above transfer of property in trust, the Corn Exchange National Bank and Trust Company, Philadelphia, became transferee of the property and as such, liable for the payment of the amount of the deficiency of $62,741.94, plus statutory interest. Section 827 (b), Internal Revenue Code. [1] *254 *255 There is no dispute about the value at optional valuation date of the assets in the hands of the executors for administration or in the hands of the trustee of the 1922 trust. The record discloses that the assets in the hands of the executors for administration are of the value at optional valuation date of $84,526.80. The amount of the deductions claimed and allowed and the estate tax reported and paid is $96,297.25. There is, therefore, a deficit in the estate. The estate is insolvent and unable to pay the deficiency in estate tax of $62,741.94 determined by the Commissioner or as may be recomputed under Rule 50, plus interest. Since the decedent made a transfer in trust in 1922 of property, intended to take effect in possession or enjoyment at or after his death, the trustee of the 1922 trust is liable under section 827 (b) for such deficiency. See, Baumgartner v. Commissioner, 51 Fed. (2d) 472, certiorari denied, *256 284 U.S. 674; Bell et al., v. Commissioner, 82 Fed. (2d) 499; Malcolm D. Champlin, Administrator C.T.A. et al., 6 T.C. 280, 285. Decisions will be entered under Rule 50. Footnotes
*. Unexplained discrepancies in number of children, i.e., the deed of trust of September 15, 1922, referring to five children and the stipulation to four daughters living on that date.↩
1. SEC. 827. LIEN FOR TAX. (a) * * * (b) Upon Property of Transferee. - If (1) except in the case of a bona fide sale for an adequate and full consideration in money or money's worth, the decedent makes a transfer, by trust or otherwise, of any property in contemplation of or intended to take effect in possession or enjoyment at or after his death, or makes a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (A) the possession or enjoyment of, or the right to the income from, the property, or (B) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom, or (2) if insurance passes under a contract executed by the decedent in favor of a specific beneficiary, and if in either case the tax in respect thereto is not paid when due, then the transferee, trustee, or beneficiary shall be personally liable for such tax, and such property, to the extent of the decedent's interest therein at the time of such transfer, or to the extent of such beneficiary's interest under such contract of insurance, shall be subject to a like lien equal to the amount of such tax. * * * [This section was amended by section 411 (a) of the Revenue Act of 1942, but the amendment was made applicable by section 401 "only with respect to estates of decedents dying after the date of the enactment of this Act." (Oct. 21, 1942.) Section 411 (b) of the same Act amended section 900 (e), I.R.C., to extend the definition of "transferee" to include "a person who, under section 827 (b)↩, is personally liable for any part of the tax."]